JACKSON PARK YACHT CLUB *et al.*, Plaintiffs-Appellees, *v.*
THE DEPARTMENT OF LOCAL GOVERNMENT AFFAIRS *et al.*,
Defendants-Appellants.

First District (3rd Division)    No. 80-976

Opinion filed February 11, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellants.

Flanagan, Bilton & Brannigan, of Chicago (Dean H. Bilton, of counsel), for appellee Jackson Park Yacht Club.

Joseph A. Power, of Chicago (Leslie P. Liss, of counsel), for appellee Chicago Park District.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This consolidated appeal arises from administrative review actions filed by plaintiffs, Jackson Park Yacht Club, Chicago Corinthian Yacht Club, Southern Shores Yacht Club, and the Chicago Park District, seeking review of decisions of defendant, Illinois Department of Local Government Affairs, disapproving 1978 real estate tax exemptions granted by the Board of Appeals of Cook County. The trial court reversed the department's rulings, and the department appeals.

Plaintiff yacht clubs use certain parcels of real estate belonging to the Chicago Park District. It is undisputed that the subject properties, being owned in fee by the park district, are exempt from taxation. (Ill. Rev. Stat. 1979, ch. 120, par. 500.14.) At issue, however, is whether the yacht clubs' interests in these properties are subject to taxation under section 26 of the

Revenue Act of 1939. (Ill. Rev. Stat. 1979, ch. 120, par. 507.) Section 26 provides, in relevant part:

"[W]hen real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate."

All three yacht clubs were assessed for the 1978 tax year. Jackson Park and Chicago Corinthian filed petitions before the board of appeals in response complaining that the 1978 assessment was void. The petitions alleged that the yacht clubs had possession of certain tax exempt real property pursuant to permits issued by the park district; that they were not lessees; and that in 1976 and 1977, the circuit court of Cook County, finding that the yacht clubs' uses of the properties were not interests in real estate subject to taxation, entered orders sustaining the clubs' objections to 1974 and 1975 taxes respectively. Copies of the circuit court orders and the permit agreements were attached to the petitions. Southern Shores purportedly filed a similar petition. Yet the record does not contain such petition nor does it include a copy of Southern Shore's permit agreement. The record does reflect circuit court orders disposing of Southern Shores' objections to 1974 and 1975 taxes in the same manner as the other clubs.

In June 1979, the board of appeals approved the exemption claimed by each yacht club for year 1978. As provided by statute, these matters were then transferred to the department for its approval. (Ill. Rev. Stat. 1979, ch. 120, par. 600.) Documents forwarded to the department included: board of appeals 1978 real estate exemption complaints; the board's field investigation reports; the documents granting exemptions by the board; and the clubs' petitions and supporting exhibits.

Each yacht club later filed a brief and supporting documents with the department. In their briefs, the yacht clubs maintained that they had possession pursuant to permits, not leases, and that the department had no authority to review the decisions of the board of appeals in view of three prior judicial determinations finding their interests were not subject to real property taxation. Each club requested a hearing and asked the department to approve the exemption.

On September 7, 1979, without conducting a hearing, the department found that the properties were "not in exempt use," and disapproved the decisions of the board of appeals declaring such properties exempt. The department's certification of disapproval further provided that any application for review of the decision was to be filed with the department within 10 days of its ruling.

Shortly thereafter, plaintiffs, each joined by the park district, filed

their respective complaints for administrative review alleging that the department's orders disapproving the exemptions were illegal and void. In the complaints, plaintiffs urged that the basis of the department's decisions—"not in exempt use"—had no relevance to the park district's exemption; that the decisions were against the manifest weight of the evidence; and that the failure to grant plaintiffs a hearing constituted a denial of due process. They again asserted the department's lack of jurisdiction because of the previous judicial determinations. Copies of the pertinent court orders, board of appeals' exemption approval, brief filed before the department, and department's certificate of disapproval accompanied each complaint.

Defendants failed to file answers, and each plaintiff requested summary judgment. The department then filed answers to each complaint. Each answer set forth the record of proceedings under review consisting of the aforementioned documents filed by plaintiffs, the board of appeals, and the department.

On February 28, 1980, after considering the pleadings, exhibits and arguments of counsel, the court concluded that the permit agreements issued to the three clubs were revocable personal licenses, not leases, and that plaintiffs' uses thus were not taxable interests in real estate. The court observed that it was the parties' intention only to give a limited revocable license, not to convey an interest in realty; that the clubs did not have exclusive possession; that they paid no rental; that the agreements were not assignable; and that the park district retained complete control of the properties throughout the duration of the agreements. Accordingly, the trial court set aside the department's decisions as error and not supported by the evidence, and directed the department to notify the assessor and board of appeals that the properties were exempt.

We initially shall consider plaintiffs' contention that the department lacked jurisdiction to review the action of the board of appeals because of the prior judicial determinations finding their interests in the properties not subject to taxation.

Section 119 of the Revenue Act of 1939 reads, in relevant part, as follows:

> "If the board of appeals in any county containing 1,000,000 or more inhabitants determines that any property claimed to be exempt from taxation is not liable to taxation and the question as to the liability of such property to taxation has not previously been judicially determined, the decision of the board shall not be final unless approved by the Department." Ill. Rev. Stat. 1979, ch. 120, par. 600.

■■■ When the department reviewed the board of appeals action in the present matter, no judicial determination of plaintiffs' liability for 1978

real estate taxes had been rendered. Plaintiffs cite no authority which lends support to their proposition that the circuit court orders sustaining objections to 1974, 1975 and 1976 taxes were dispositive of their 1978 exemption claims. Because a cause of action for taxes for one year is not identical to a cause of action for taxes in subsequent years, a decision adjudicating tax status for a particular year is not *res judicata* as to the status of the property in later years. (*Turn Verein Lincoln v. Paschen* (1960), 20 Ill. 2d 229, 170 N.E.2d 111; *Hopedale Medical Foundation v. Tazewell County Collector* (1978), 59 Ill. App. 3d 816, 375 N.E.2d 1376, *cert. denied* (1979), 440 U.S. 916, 59 L. Ed. 2d 466, 99 S. Ct. 1234.) Consequently, even where the ownership and use of the property remain the same, a party may be required to relitigate the issue of its exemption annually. (See *People ex rel. Tomlin v. Illinois State Bar Association* (1980), 89 Ill. App. 3d 1005, 412 N.E.2d 198.) The department was empowered to approve the decision of the board of appeals as to the 1978 taxes.

The department initially contends that the trial court erred in granting plaintiffs' motion for summary judgment since issues of material fact existed. We believe, however, that the trial court had before it all the necessary documentary evidence to enable it to determine whether the contractual agreements amounted to a lease or an agreement.

The department maintains that the case of *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 366 N.E.2d 585, sets forth evidentiary criteria pertaining to the tax liability of a user of exempt property which were not developed in the present case. The *Dee El Garage* decision is inapposite. There, the objector, a lessee of property owned by a tax exempt entity, asserted that the tax was void because the fee interest in the exempt land and building, rather than its leasehold interest, was assessed. As support for its contention, the objector pointed out that none of the following documents expressly indicated that the tax was being levied against a leasehold interest: the property record card, the warrant book, the tax judgment forfeiture and redemption record, the Sidewell maps, and the real estate permanent index numbers. The court rejected the proposition that, unless otherwise indicated, an assessment is presumptively upon the freehold interest. Unlike the present situation where plaintiffs were found to be licensees, the objector in *Dee El Garage* was a lessee. Moreover, contrary to the department's suggestion, the various documents listed were not regarded by the court as indicators of a leasehold interest or of tax liability for the use of exempt property.

■■ ■ Whether a contractual agreement is a lease or a license is determined, not from the language used, but from the legal effect of its provisions. The existence of a lease depends upon the intention of the parties. (*In re Application of Rosewell* (1979), 69 Ill. App. 3d 996, 387 N.E.2d 866.) Essential requirements of a lease include: a definite agree-

ment as to the extent and bounds of the property; a definite and agreed term; and a definite and agreed rental price and manner of payment. (*People v. Chicago Metro Car Rentals, Inc.* (1979), 72 Ill. App. 3d 626, 391 N.E.2d 42.) A license is not assignable, and merely gives another the right to use the premises for a specific purpose with the owner retaining possession and control. (*In re Application of Rosewell.*) Unlike leases, licenses for the use of exempt property are not taxable interests under section 26 of the Revenue Act of 1939. Ill. Rev. Stat. 1979, ch. 120, par. 507.

■ An examination of the record convinces us that the trial court was presented with overwhelming evidence upon which to conclude that the permit agreements of Jackson Park and Chicago Corinthian were revocable licenses entitling those clubs to the exemptions claimed. The permit agreement of the two clubs revealed that each club was granted permission to maintain and operate a building adjacent to the park district's harbor as a yachting facility; that the facility would be accessible to all persons on an equal basis; that the permit was revocable by either party upon written notice; and that the rights and privileges accorded by the permit were not assignable without written consent of the park district. Neither agreement set forth any definite rental or term. In view of these provisions, which were not contested in the department's answer, the trial court properly concluded that Jackson Park and Chicago Corinthian were not lessees of the properties and had no responsibility for 1978 real estate taxes.

■ We note, however, that no copy of the permit agreement between Southern Shores and the park district was submitted to the trial court. In its absence, there is an insufficient evidentiary basis for the trial court's conclusion that Southern Shores merely had a revocable license to use the property. The nature of its interest in the property thus remains an issue of material fact. And, contrary to Southern Shores' suggestion, the department's failure to deny the existence of the permit agreement is not dispositive of the issue.

The department next argues that the complaints for administrative review were prematurely filed because plaintiffs failed to exhaust their administrative remedies.

A party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737; see *Oliver v. Civil Service Com.* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671.) In the present case, prior to filing their complaints for administrative review, plaintiffs pursued their administrative remedies by petitioning the board of appeals and later, the department, for correction of the 1978 assessments.

Section 138 of the Revenue Act of 1939 provides that the circuit court

has the power to review all final administrative decisions of the department in administering the Act, and that such proceedings are governed by the Administrative Review Act. (Ill. Rev. Stat. 1979, ch. 120, par. 619.) Section 1 of the Administrative Review Act defines "administrative decision" as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." (Ill. Rev. Stat. 1979, ch. 110, par. 264.) There is no question that the disapproval of the yacht clubs' exemptions, thereby making them responsible for taxes, affected their legal rights and terminated the proceedings before the department. (See *Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 383 N.E.2d 958.) Moreover, it is clear that the circuit court has jurisdiction to review decisions of the department denying tax exemptions. See *Christian Action Ministry v. Department of Local Government Affairs*; *People ex rel. Tomlin v. Illinois State Bar Association.*

The department points out, however, that the certificates of disapproval advised plaintiffs as follows:

"Any application for review of the Department's decision shall be filed in writing with the Department within 10 days from the date of this ruling. A brief citing additional facts and authorities relied upon by the petitioner may accompany the application for review or may be submitted at a later date."

Additionally, section 1 of the Administrative Review Act provides:

"In all cases in which a statute or a rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time * * *, and an application for such rehearing or review is made, no administrative decision of such agency shall be final as to the party applying therefor until such rehearing or review is had or denied." (Ill. Rev. Stat. 1979, ch. 110, par. 264.)

The department argues that since plaintiffs failed to apply for such review or rehearing, they did not exhaust their administrative remedies.

Such contention was rejected by this court in *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230. There, the defendant moved to dismiss the plaintiff's complaint for administrative review alleging that the plaintiff did not exhaust his administrative remedies because he failed to file a petition for rehearing. The court observed that, by express language in section 1 of the Administrative Review Act, an administrative decision is final unless a rule of the agency permits the filing of an application for rehearing *and* such application is filed. From this language, the court reasoned that since the aggrieved party did not file such application, although authorized to do so, the motion to dismiss was

properly denied. After noting that the aggrieved party's position had been argued before and rejected by the administrative agency, the court added that no further purpose would be served by requiring an application for rehearing in all cases before judicial review could be had. But see *Hoffman v. Department of Registration & Education* (1980), 87 Ill. App. 3d 920, 410 N.E.2d 291; *Oliver v. Civil Service Com.*

■■ In the present case, neither the language in the certificate of disapproval nor any statute or department rule suggests that applications for rehearing are mandatory. Here, as in *Danison*, although applications for review or rehearing of the department's decision were authorized, none were filed. Thus, the department's decisions disapproving the yacht clubs' exemption claims were final, and plaintiffs were entitled to seek review in the circuit court. We also note that when the department issued its rulings, plaintiffs had already supplied briefs and documents in support of their claims and had requested, unsuccessfully, a hearing. In such instance, no purpose would have been served by requiring plaintiffs to apply to the department for a rehearing. Plaintiffs' complaints for administrative review were not filed prematurely.

■■ We also reject the department's claim that the procedural avenue of review employed by plaintiffs is fatally defective because it circumvented a full evidentiary hearing at which relevant facts could have been developed. We believe that the documents compiled in the administrative proceedings provided the trial court with a complete record for disposing of the claims of Jackson Park and Chicago Corinthian. But just as importantly, despite plaintiffs' written requests for a hearing, the department disposed of the matter without conducting such hearing. In light of its action, the department ought not now be heard to complain that there was no opportunity for the parties to develop the evidentiary criteria necessary for a determination of tax liability.

For the aforementioned reasons, the orders of the circuit court of Cook County setting aside the department's disapproval and declaring Jackson Park and Chicago Corinthian Yacht Clubs exempt from 1978 real estate taxes are affirmed and the order exempting Southern Shores Yacht Club is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Affirmed in part; reversed and remanded in part.

RIZZI, P. J., and WHITE, J., concur.