(No. 49288.—

CONSOLIDATED DISTILLED PRODUCTS, INC., *et al.,* v. ROBERT H. ALLPHIN, Director of Revenue, *et al.,* Appellants.

*Opinion filed Sept. 19, 1978.—Rehearing denied Dec. 1, 1978.*

20

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Mary Stafford, and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Kenart M. Rahn and George F. Barrett, of Chicago (George R. Bieber and Stewart D. Spitzer, of counsel), for appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

On April 17, 1974, twenty-two importing distributors of wine filed an action in the circuit court of Cook County, seeking to have a portion of section 1 of article VIII of the Liquor Control Act (Ill. Rev. Stat. 1969, ch. 43, par. 158) declared unconstitutional. Under the Liquor Control Act, prior to July 15, 1971, distributors of wine made from grapes grown in Illinois enjoyed a lower tax rate than did distributors of wine made from grapes grown elsewhere. Although Public Act 77–295, effective July 15, 1971, amended the statute and eliminated that tax differential (Ill. Rev. Stat. 1971, ch. 43, par. 158), plaintiffs sought relief predicated on their statutory right to be· recompensed if the taxes for the period from January 1968 through April 1971 were paid in error. On October 21, 1974, the same plaintiffs filed a substantially similar action based on taxes paid for the period from May 1971 through August 1971. The actions were subsequently consolidated for trial.

In counts I and II of either complaint, plaintiffs sought declaratory relief on the grounds that the taxes imposed upon them violated the commerce, due process

and equal protection clauses of the United States Constitution, as well as the uniformity and special legislation clauses of the Illinois Constitution of 1870. Plaintiffs prayed the court to declare the taxes null and void and to further declare that the plaintiffs were entitled to a credit or refund of the taxes paid. In count III of either complaint, plaintiffs alleged that the Department of Revenue (Department) had failed to properly process plaintiffs' claims for credit pursuant to article VIII, section 2a, of the Liquor Control Act (Ill. Rev. Stat. 1971, ch. 43, par. 159a). Plaintiffs sought, among other things, a declaration that the Department should process their claims without considering whether plaintiffs would be unjustly enriched if the claims were allowed. Count IV in either complaint petitioned for a writ of *mandamus* to (a) compel the Department to hold a hearing with respect to plaintiffs' claims for credit; (b) preclude the Department from considering the issue of unjust enrichment; (c) compel the Department to determine that the taxes in question had been paid in error; and (d) compel the Department to grant plaintiffs' claims for credit.

In an order dated October 15, 1976, the trial court denied the Department's motions to strike and dismiss all four counts of plaintiffs' complaints. The Department elected to stand on its motions and, on December 1, 1976, the circuit court, pursuant to plaintiffs' motion for default judgment on the pleadings, entered its final order. The order granted plaintiffs the relief sought and also declared unconstitutional that portion of article VIII, section 1, of the Liquor Control Act which provided for a tax differential favoring persons who dealt in wine made from grapes grown in Illinois. The Department appealed directly to this court pursuant to Supreme Court Rule 302(a) (58 Ill. 2d R. 302(a)).

The issues presented for review are:

(1) Does this court's decision in *Consoli-*

*dated Distilled Products, Inc. v. Mahin* (1973), 56 Ill. 2d 110, *appeal dismissed* (1974), 419 U.S. 809, 42 L. Ed. 2d 36, 95 S. Ct. 23, bar plaintiffs from litigating this action under the principle of *res judicata*?

(2) Should plaintiffs be precluded from securing relief by their failure to exhaust their administrative remedies?

(3) Is article VIII, section 1, of the Liquor Control Act, which imposed a lower rate of tax on wine produced from Illinois-grown grapes, constitutional?

Because we hold that, under the principle of *res judicata,* plaintiffs are barred from relitigating their claim for a reimbursement of taxes paid pursuant to article VIII, section 1, of the Liquor Control Act, we need not address the other issues.

In determining the applicability of the principle of *res judicata* to the case at bar, we first examine the scope of this court's prior decision in *Consolidated Distilled Products, Inc. v. Mahin* (1973), 56 Ill. 2d 110 (*Consolidated I*). That suit was, in pertinent part, brought as a class action by various named wine distributors on behalf of all others similarly situated—importing distributors of wine made from grapes grown outside Illinois—who had remitted taxes relative to that business pursuant to article VIII, section 1, of the Liquor Control Act. This class of wine distributors alleged that the differing tax rates for grapes grown in Illinois and grapes grown elsewhere violated numerous clauses of the United States and Illinois constitutions. The class sought a judgment declaring the tax invalid, the enjoining of the collection of such taxes, the deposit in a protest fund of any sums paid during the pendency of the case, an order that the class be reimbursed, either by refund or by the issuance of a credit memorandum, for any sums paid into the protest fund,

and an award of the class' attorneys' fees. Certain individuals who alleged that they had purchased wine at retail were permitted to intervene on behalf of all wine purchasers in Illinois. It was their position that, if any reimbursement was due, it should accrue to the ultimate purchasers who had borne the actual burden of the tax.

In *Consolidated I,* the court found that the intervenor class of wine purchasers had failed to adequately show that the burden of the tax was transferred by the distributors to the retail liquor dealers and, in turn, by the liquor dealers to the class of wine purchasers. The court concluded, in this regard, that the intervenors were not entitled to receive the funds held on deposit. (56 Ill. 2d 110, 117.) The court, assuming *arguendo* that the challenged provision of the Liquor Control Act was invalid, considered whether the class of wine distributors would be entitled to the monies held in the protest fund. It reasoned that to avoid the unjust enrichment of persons who had not actually borne the burden of the tax, it was necessary that the remitters of a tax show they had ultimately paid the tax and had not passed the tax burden on to others. The court concluded:

"There has been no showing that [the wine distributors] bore the burden of the tax. The only proof that bears upon that question is the stipulation \*\*\* that shows, or tends to show, that they passed the tax on to the retailers to whom they sold." (56 Ill. 2d 110, 119.)

Because it held that the class of wine distributors was not entitled to a reimbursement of the taxes paid, the court found it unnecessary to decide the issue of the constitutionality of the differential rate of tax.

The definition and purport of the principle of *res judicata* were ably set forth by this court in *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 426-27:

"[A] cause of action finally determined between

the parties on the merits, by a court of competent jurisdiction, [which] cannot again be litigated by new proceedings before the same or any other tribunal ***. A judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties or those in privity with them. The doctrine extends not only to the questions actually decided but to all grounds of recovery or defense which might have been presented. [Citations.] Where the former adjudication is relied on as an absolute bar to a subsequent action, it must be shown that the cause of action, the thing to be recovered and the parties are the same in both proceedings. The principle of *res judicata* applies, however, to cases where, although the cause of action is not the same, some fact or question has been determined and adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the determination in the former suit of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the later suit, regardless of the identity of the cause of action, or the lack of it, in the two suits. When the second action between the same parties is upon a different cause of action, claim or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined. *** This principle is sometimes called estoppel by verdict."

Before us is the question of whether this action is actually a relitigation of a matter already finally adjudged

between the parties in *Consolidated 1.* Plaintiffs assert that the application of *res judicata* is unwarranted because the two cases involve different parties. They point out that parties who were involved in *Consolidated 1* are not represented in the case at bar, that individual State officials were the defendants in *Consolidated 1,* but that in this case the Department of Revenue is named as a defendant, and that *Consolidated 1* was a class action while, here, plaintiffs sue individually. We find these differences immaterial to the applicability of the principle of *res judicata.*

Each party in this case was represented as a party in interest in the prior adjudication. Seven of the twenty-two plaintiff wine distributors in the case at bar were named parties in *Consolidated 1,* and all 22 were members of the class of wine distributors represented in that case. Because class members have a common interest in the litigation, a judgment in favor of or against the class is operative as to all class members represented. (*People ex rel. Furlong v. Board of Election Commissioners* (1949), 404 Ill. 326, 329; 46 Am. Jur. 2d *Judgments* sec. 539 (1969).) Both actions sought to compel the State, its agencies and officials to recompense plaintiffs for monies paid pursuant to an allegedly invalid tax. The effect of the litigation is the same whether the suit is brought against the State agency or the official charged with the responsibility of administering the provisions of the challenged State statute. (*City of Elmhurst v. Kegerreis* (1945), 392 Ill. 195, 204; 46 Am. Jur. 2d *Judgments* sec. 578 (1969).) Consequently, with regard to the identity of the parties, the judgment against the class of wine distributors in *Consolidated 1* is binding upon plaintiffs herein.

Plaintiffs maintain that the cause of action in the case at bar is not the same as that which was finally adjudged in *Consolidated 1.* In support of this position, plaintiffs note that the taxes at issue in this case relate to periods which

date back to January 1, 1968, while taxes involved in *Consolidated 1* were limited to periods during 1970 and 1971. Plaintiffs cite this court's decision in *Turn Verein Lincoln v. Paschen* (1960), 20 Ill. 2d 229, mistakenly for the proposition that a previous decision which relates to taxes of a particular year is generally not considered *res judicata* as to taxes *of a prior year. Turn Verein Lincoln* involved a determination that certain property was not used exclusively for school purposes and was, therefore, not exempt from taxation. A prior adjudication had disposed of the issue as to taxes for the years 1939 through 1952. The case then before the court challenged the taxable status of the property during the years 1953 through 1955. The court held that a former decision relating to taxes for one year may not be *res judicata* as to taxes *for subsequent years.* (20 Ill. 2d 229, 230-31.) See *Oak Park Club v. Brenza* (1955), 7 Ill. 2d 389, 392; *People ex rel. Lloyd v. University of Illinois* (1934), 357 Ill. 369, 372; *Tait v. Western Maryland Ry. Co.* (1933), 289 U.S. 620, 624, 77 L. Ed. 1405, 1408, 53 S. Ct. 706, 707.

There is an obvious reason for the above-cited proposition to apply to taxes for subsequent years but not to taxes for prior years. The principle of *res judicata* extends not only to matters actually decided but to all matters which might have been presented and decided. In the typical situation, the prior adjudication relates to those tax years up to the time the prior adjudication commenced. A later adjudication would relate to those years for which a tax had not yet been imposed or paid at the commencement of the prior adjudication. The proposition reflects the common sense notion that it would be grossly unfair to apply the principle of *res judicata* to matters relating to tax years subsequent to the prior adjudication when the prior adjudication could not have anticipated a possible change in circumstances.

As pertinent here, *Consolidated 1* involved taxes for

the years 1970 and 1971, while the instant case encompasses the same period and extends back to January 1968. The matters relating to the taxes of 1968 and 1969 were not unknown or speculative at the time *Consolidated I* was commenced, and, inasmuch as they could have been presented and decided in that action, *res judicata* would apply.

Even if we were to adopt plaintiffs' proposition that a former decision relating to taxes for one year may not be *res judicata* as to taxes for prior years, this would mean only that the causes of action would be deemed different, and, hence, the principle of estoppel by verdict, rather than *res judicata,* would apply. The judgment in *Consolidated I* would then be binding on the plaintiffs only as to those matters which were *actually* litigated and determined. *City of Peoria v. Peoria City Lines, Inc.* (1962), 24 Ill. 2d 457, 464.

Plaintiffs in the case at bar do not claim that they did in fact bear the burden of the tax for those years not involved in *Consolidated I.* Instead, they insist that they need not have borne such burden in order to be granted relief in this case. A careful reading of *Consolidated I* indicates that its threshold issue was whether the plaintiff class, in order to establish its right to a tax reimbursement, must show that it bore the burden of the tax. The court reasoned that if the plaintiff class did not have a right to a tax reimbursement, there would be no reason to review the constitutional validity of the differential tax rate. (The differential rate was eliminated in 1971, so that, unless a party was entitled to a tax reimbursement due to the differential nature of the tax, the constitutional issue would be moot.) The court held not only that the plaintiff class must show as a matter of law that it bore the burden of the tax, but that it failed as a matter of fact to do so. Accordingly, the plaintiff class was not entitled to a tax refund or to the issuance of a credit memorandum for use

in the payment of future taxes. We find no merit to plaintiffs' contention that *Consolidated I* determined only the question of tax refunds, not the question of tax credits. As the *Consolidated I* court expressly stated in quoting from *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 537:

> " 'No reason has been suggested why the basic policy that the legislature has thus expressed is not equally applicable whether the proceeding is an administrative one terminating in the issuance of a credit memorandum for use in the payment of future taxes, or a judicial one terminating in the refund of cash held under an injunction by State officials. [Citation.]' " *Consolidated Distilled Products, Inc. v. Mahin* (1974), 56 Ill. 2d 110, 118. Accord *Fiorito v. Jones* (1971), 48 Ill. 2d 566, 570.

It is quite apparent that plaintiffs are actually attempting to relitigate that which was finally adjudged in *Consolidated I*. Although plaintiffs' complaint in the case at bar includes a count sounding in *mandamus* (not present in *Consolidated I*), *mandamus* relief here depends upon a determination that plaintiffs could be entitled to a tax credit without having shown that they bore the burden of the tax. "The mere fact that there is a change in the style of expression, or even a variation in the prayer for relief, does not prevent the application of the doctrine of *res judicata.*" (*Midlinsky v. Rubin* (1930), 341 Ill. 378, 386.) *Consolidated I* determined that the constitutionality of the differential tax rate could not be challenged without a showing that the party challenging the tax bore its burden. This matter cannot be relitigated here in the guise of a *mandamus* action.

Because this action is actually a relitigation of matters finally adjudged between the parties in *Consolidated I,* plaintiffs are barred by the principle of *res judicata* from

pursuing this action. The judgment of the trial court must, therefore, be reversed and the cause remanded to the trial court with directions to grant the Department's motion to dismiss.

*Reversed and remanded, with directions.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.